# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7022 | **DATE** | 3/29/2004 |
| **CASE TITLE** | | Spann vs. Community Bank | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Community Bank's motion to dismiss is granted.

*Amy J St E*

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

TH✓   courtroom deputy's initials

number of notices

MAR 3 0 2004
date docketed

CMA
docketing deputy initials

date mailed notice

U.S. DISTRICT COURT
CLERK
2004 MAR 29 PM 5: 19

Date/time received in central Clerk's Office    mailing deputy initials

Document Number

67

STEPHANIE SPANN; LEONILA T. NINI;     )
EUFRONIO NINI; JOHN HARDT;            )
ROBBIN VERBECK; STEPHANIE HAFFORD;    )
CHARLES B. POINDEXTER; MAUREEN F.     )
POINDEXTER; DAVID B. WALKER;          )
SHUNDRA R. WALKER; JESSIE DODD;       )
JAMES BECKIUS; LINDA WHITEHEAD;       )
LYNELL B. WINGFIELD; JAIRO IVAN       )
SARRIA; BEATRIZ SARRIA; MICHELLE      )      No. 03 C 7022
MORGAN; SHARON FINNERTY; DONALD       )
APPLETON; and JEANETTE APPLETON,      )
                                      )
                        Plaintiffs,   )
                                      )
        v.                            )
                                      )
COMMUNITY BANK OF NORTHERN            )
VIRGINIA; GUARANTY NATIONAL BANK      )
OF TALLAHASSEE; HOMECOMINGS           )
FINANCIAL NETWORK, INC.;              )
HOUSEHOLD FINANCIAL SERVICES, INC.;   )
RESIDENTIAL FUNDING CORPORATION;      )
and DOES 1-25,                        )
                                      )
                        Defendants.   )

**DOCKETED**

**MAR 3 0 2004**

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs have filed a two-count Second Amended Complaint ("SAC") against multiple

Defendants, including Community Bank of Northern Virginia ("Community Bank"). Count I

alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), as amended

by the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639 ("HOEPA"). Count II

seeks recovery against Community Bank and Guaranty National Bank for a violation of Section

1

67

4.1a of the Illinois Interest Act, 815 ILCS 205/4.1a. Plaintiffs seek rescission, statutory damages, and declaratory relief. Defendant Community Bank has moved to dismiss Plaintiffs' complaint. For the reasons set forth below, Defendant Community Bank's motion is granted.

## FACTUAL BACKGROUND

### I.     Allegations in the SAC

Only certain Plaintiffs borrowed money from Community Bank and have asserted claims against Community Bank: Stephanie Spann, Leonila T. Nini and Eufronio Nini (the "Ninis"), John Hardt and Robbin Verbeck (the "Hardt/Verbecks"), Lynell B. Wingfield, and Sharon Finerty (collectively, the "Community Bank Plaintiffs"). The Community Bank Plaintiffs reside in Illinois: Spann resides in Rockford; the Ninis reside in Darien; the Hardt/Verbecks live in Collinsville; Wingfield lives in O'Fallon; and Finerty resides in Homewood.

Each of the Community Bank Plaintiffs obtained a residential second mortgage loan nominally made from Community Bank. Plaintiffs allege that these loans had high "points and fees, typically amounting to 10% of the loan balance." (R. 50-1, SAC ¶ 28.) They contend that these loans were extensions of consumer credit subject to TILA and HOEPA. Plaintiffs further allege that Community Bank actually did not make the loans at issue in this case. Instead, EquityPlus Financial made the loans and in effect "rented" Community Bank's banking charter to issue them. (*Id.* ¶ 31.) Thus, Plaintiffs allege that the loans only nominally originated from Community Bank.

The Community Bank Plaintiffs allege that the finance charges on their second mortgage loans are understated and the amounts financed are overstated on the TILA disclosures furnished to them in connection with these second mortgages. (*Id.* ¶ 186.) They further allege that the

2

annual percentage rate was understated on the TILA financial disclosures and the advance HOEPA disclosures "by an amount exceeding any applicable tolerances." (*Id.* ¶ 187.)

The Community Bank Plaintiffs seek to rescind the loans made or held by Defendants under TILA and Regulation Z of the Federal Reserve Board, 12 C.F.R., part 226. They also seek statutory damages available under both TILA and HOEPA, and to obtain a declaratory judgment regarding their obligations toward Defendants.

## II.    Related Class Action Complaints

Litigation has taken place in Pennsylvania that is relevant to this case. On May 1, 2001, a class action complaint, entitled *Davis et al. v. Community Bank of Northern Virginia et al*, was filed in the Court of Common Pleas of Allegheny County, Pennsylvania. (G.D. 01-8643.) The *Davis* plaintiffs commenced the case on behalf of themselves and all person who received secondary mortgage loans funded by the Community Bank of Northern Virginia where the loan was secured by real property in Pennsylvania. On or about July 3, 2001, the *Davis* plaintiffs filed an amended complaint on behalf of the same class. (R. 42-1, Sur Surreply in Supp. of Mot. to Dismiss, Ex. A.) On July 27, 2001, the *Davis* defendants removed the case to the United States District Court for the Western District of Pennsylvania. (Civil Action, 01-1406 (W.D. Pa.)). The Western District of Pennsylvania remanded that case to state court on April 25, 2002. (R. 42-1, Sur Surreply in Supp. of Mot. to Dismiss, Ex. B.) On June 12, 2002, the Davis plaintiffs filed a Second Amended Complaint ("*Davis* second amended complaint"). (*Id.* Ex. C). In the *Davis* second amended complaint, the plaintiffs sought to represent a purported class of persons who received a secondary mortgage from Community Bank where "(a) the loan is secured by real property in Pennsylvania (the 'Pennsylvania Class'), (b) the loan is secured by real property

anywhere in the United States (the 'National Class'), and where the loan meets the definition of high-cost mortgage set forth at 15 U.S.C. §§ 1602(aa)(1)(A)-(B). (*Id.* Ex. C, ¶ 1.) On July 9, 2002, the *Davis* defendants again removed the case to the Untied States District Court for the Western District of Pennsylvania. (Civil Action 02-1201 (W.D. Pa.)). This time the case remained in federal court. On July 25, 2002, the *Davis* plaintiffs filed a third amended complaint on behalf of the same class. (R. 42-1, Sur Surreply in Supp. of Mot. to Dismiss, Ex. D.) In or about November, 2003, a Consolidated Amended Cass Action Complaint was filed in the *Davis* case in the United States District Court for the Western District of Pennsylvania on behalf of the National Class where the loan was repurchased by Residential Funding Corporation. (*Id.*, Ex. E. ¶ 369.)

The Western District of Pennsylvania consolidated *Davis* with *Kessler et al v. GMAC Residential Funding Corp., et al.*, sub nom *In Re Community Bank of Northern Virginia and guaranty National Bank of Tallahassee Second Mortgage Loan Litigation*, Civil Action No. 03-0425 (W.D. Pa.), in order to obtain certification of the settlement class and approval of the settlement. Plaintiffs allege that they opted out of the settlement in the *Davis* action, but the court invalidated their opt-out submissions. The validity of Plaintiffs' opt-out currently is on appeal in *Davis*.

## LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *See Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When considering a motion to dismiss, the Court considers "whether relief is possible under [any] set of facts that could be established consistent

with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). The Court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). *See also Thomas v. Law Firm of Simpson & Cybak*, 354 F.3d 696, 697 (7th Cir. 2004). The Court is not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

In deciding this motion to dismiss, the Court can consider any documents incorporated or referenced in the complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999).

Statute of limitations defenses are frequently inappropriate for resolution on a motion to dismiss because their application often depends upon factual determinations. *Johnson Controls, Inc. v. Exide Corp.*, 129 F. Supp. 2d 1137, 1142 (N.D. Ill. 2001). If a plaintiff alleges facts that show that his action is time-barred, however, he may plead himself out of court. *Id.* All reasonable inferences must be drawn in plaintiffs' favor when a defendant seeks a dismissal because the claim is time-barred. *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993).

## ANALYSIS

### I.     The Rescission Claims

The Community Bank Plaintiffs allege that the transactions at issue are subject to rescission pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23. Section 226.23 requires a

consumer to exercise her right to rescission within three business days from either the date of consummation, delivery of notice of the right to rescind, or delivery of all material disclosures, whichever is later. 12 C.F.R. § 226.23(a).

Section 1635(f) sets forth a time limit for the consumer to exercise her right to rescind. It provides, in relevant part, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor." 15 U.S.C. § 1635(f).

Community Bank argues that Spann, Wingfield and the Hardt/Verbecks all obtained their loans more than three years prior to the filing of this action on October 3, 2003. Based on the allegations in the SAC, Defendant's timeline is accurate: Lynell closed on May 28, 1999; Spann closed on June 15, 2000; and the Hardt/Verbecks closed on August 18, 2000. Each of these closing dates took place more than three years before the filing of this lawsuit. Accordingly, Community Bank argues that the rescission claims of these Plaintiffs are time-barred pursuant to 15 U.S.C. § 1635. The Community Bank Plaintiffs contend that the three-year statute of limitations is tolled, and thus their claims are not time-barred.

## II.    Tolling of the Rescission Claims

"Tolling doctrines stop the statute of limitations from running even if the accrual date has passed." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1991). Plaintiffs argue that the three-year statute of limitations for their rescission claims is tolled for two reasons. First, Plaintiffs asserted that the filing of the *Davis* class action in Pennsylvania tolled it. Second, Plaintiffs claim that the statute of limitations is suspended under the doctrine of fraudulent

6

concealment. Before addressing either of these arguments, the Court first addresses whether the three-year statute of limitations for Plaintiffs' rescission claim is subject to tolling.

## A. The Three-Year Limitation Period is Not Subject to Tolling

In *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), the Supreme Court held that Section 1635(f) "completely extinguishes the right of rescission at the end of the 3-year period." *Id.* at 412. The *Beach* Court noted that the "'ultimate question' is whether Congress intended that 'the right shall be enforceable in any event after the prescribed time.'" *Id.* at 416 (citations omitted). The Supreme Court concluded that "Section 1635(f) . . . takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the 'right of rescission [under the Act] shall expire' at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous." *Id.* at 417 (citations omitted). The *Beach* Court went on to compare Section 1635(f) to other provisions of TILA and concluded that Congress deliberately intended to preclude a federal right to rescind after the expiration of the three-year period. *Id.* at 419.

Given the Supreme Court's interpretation of Section 1635(f) and a plain reading of the text of the statute, the Court agrees with Defendant Community Bank that the three-year limitation period for TILA rescission claims is incompatible with tolling. *See Taylor v. Money Store*, No. 00-35930, 2002 WL 1769962 (9th Cir. Aug. 1, 2002) (quoting *Beach*, 523 U.S. 412-13: "Equitable tolling does not apply to rescission under this provision of TILA, because § 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if

the lender has never made the required disclosure"); *Harris v. EMC Mortgage Corp.*, No. Civ. A. 01-4868, 2002 WL 32348324 (E.D. Pa. Apr. 10, 2002) (holding that TILA's three-year statute of limitations on rescission claims is not subject to tolling). Plaintiffs' attempt to distinguish *Beach* on the ground that it did not address tolling under the doctrine of fraudulent concealment is unpersuasive and conflicts with the clear language of Section 1635(f).

Even assuming *arguendo* that the three-year period were subject to tolling, both of Plaintiffs' tolling arguments fail as addressed below.

**B.     The Davis/Kessler Class Action Did Not Toll the Statute of Limitations**

In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974), *rehearing denied* 415 U.S. 952, the Supreme Court addressed the tolling effect a class action has on the statute of limitations. It held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class . . . ." *Id.* at 554, 94 S. Ct. at 756. In *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983), the Supreme Court extended the *American Pipe* holding beyond just those members of the purported class who sought to intervene: "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* at 353-54, 103 S. Ct. at 2397-98 (citation omitted). The Supreme Court recognized that this tolling rule would not impair the policies behind statutes of limitations, namely, putting the defendants on notice of adverse claims

and preventing plaintiffs from sleeping on their rights, because the filing of a class action achieves these goals. *Id.* at 352-53, 103 S. Ct. at 2397.

Citing *American Pipe*, Plaintiffs argue that the three-year statute of limitations for their rescission claims against Community Bank has been tolled by the inclusion of the Plaintiffs in the *Davis* class action. Plaintiffs argue that the applicable statute of limitations was tolled between May 1, 2001 with the filing of the *Davis* complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, and October 3, 2003, the date on which Plaintiffs opted out of the settlement. Because they filed this case on October 3, 2003, Plaintiffs argue that the three-year statute of limitations has not expired with respect to any of the individual Plaintiffs suing Community Bank.

### 1. Members of the Class

Defendant first contends that the *Davis* filing did not toll the statute of limitations on Plaintiffs' TILA claims because Plaintiffs were not members of the putative class alleged in the *Davis* complaint. Community Bank argues that the *Davis* complaint's putative class was limited to borrowers whose second mortgage loans were secured by real property in Pennsylvania.

The original *Davis* complaint and the amended complaint only purported to represent the class of persons "who received secondary mortgage loans funded by Community [Bank], secured by real property in Pennsylvania, and who were damaged by the predatory lending practices alleged herein." (R. 39-1, Surreply to Def.'s Reply in Supp. of Mot. to Dismiss, Ex. A). The *Davis* second amended complaint and third amended complaint, however, both sought to represent a nationwide class, namely, "all persons who received a secondary mortgage loan where the HUD 1 Settlement Statement executed by the borrower in connection with the loan

9

indicates that the lender for the loan" was Community Bank, and where "the loan is secured by real property anywhere in the United States" and "meets the definition of high-cost mortgage set forth in 15 U.S.C. §§ 1602(aa)(1)(A)-(B)." (R. 42-1, Sur Surreply in Supp. of Mot. to Dismiss, Exs. C & D ). The *Davis* second and third amended complaints therefore appear to include Plaintiffs as putative class members. The *Davis* second amended complaint was not filed, however, until June 12, 2002. As discussed below, mere inclusion in the class is insufficient to toll the statue of limitations. The *Davis* complaint must have alleged the same causes of action at issue in this case in order to toll the statute.

### 2. The *Davis* Plaintiffs Did Not Include TILA Claims In Their Pleadings

Defendant next argues that the *Davis* complaint did not toll the statute of limitations for Plaintiffs' TILA claims because the *Davis* plaintiffs failed to allege any TILA violations. Because the tolling doctrine only applies to the claims that were pending on behalf of the class and the *Davis* plaintiffs did not allege any TILA claims, Defendant argues that the statute of limitations does not toll as to the TILA claims asserted in this case.

Subsequent to *American Pipe*, the Supreme Court noted that "the tolling effect given to the timely prior filings in American Pipe . . . . depended heavily on the fact that [that] filing[] involved exactly the same cause of action subsequently asserted. This factor was more than a mere abstract or theoretical consideration because the prior filing . . . necessarily operated to avoid the evil against which the statute of limitations was designed to protect" *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 467, 95 S. Ct. 1716, 1723-24, 44 L. Ed. 2d 295 (1975). In his concurring opinion in *Crown, Cork & Seal*, Justice Powell also recognized that *American Pipe*'s holding is limited to claims asserted by the purported class:

10

"The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status. In *American Pipe* we noted that a class suit 'notifies the defendants not only of the substantive claims being brought against them . . . .' When thus notified, the defendant normally is not prejudiced by tolling of the statute of limitations. It is important to make certain, however, that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit."

*Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. at 354-55, 103 S. Ct. at 2398 (citations omitted). Thus, the *Davis* complaint only tolled the statute of limitations as to those claims actually alleged against Community Bank in the *Davis* action. To hold otherwise would prejudice Community Bank by allowing Plaintiffs to assert claims of which Community Bank did not have timely notice. *See also Southwire Co. v. J.P. Morgan Chase & Co.,* No. MDL 1303, 2004 WL 414799, at *18 (W.D. Wis. Mar. 3, 2004) ("Thus, to claim a tolling benefit from a previous class action, the legal theory on which the class action plaintiffs sued must be the same as the theory used by the plaintiffs claiming the tolling benefit. Because the Heliotrope actions did not involve the same causes of action as those in plaintiffs' present case against defendants, plaintiffs may not claim any tolling benefit from the Heliotrope class actions.").

A review of the pleadings in *Davis* reveals that the *Davis* plaintiffs did not allege the same causes of action involved in this lawsuit, thus the *Davis* case did not toll the statute of limitations for Plaintiffs in this case. The original complaint filed in the Allegheny Court of Common Pleas on May 1, 2001 did not contain any TILA claims for rescission. Although Plaintiffs concede this point, (R. 39-1, Pls.' Surreply p.3), they argue the docket sheet entry from the July 27, 2001 removal of the *Davis* case to the United States District Court for the Western District of Pennsylvania reflects that the *Davis* defendants premised removal on liability under 15

U.S.C. § 1640 "which sets out the civil liability of those who violate the Truth in Lending Act."
(*Id.*) Surprisingly, Plaintiffs fail to cite or rely on the underlying pleadings from that removal.
Indeed, a review of those *pleadings* demonstrates the flaw in Plaintiffs' argument. The *Davis*
Amended Complaint pending at the time of removal did not contain a TILA case. (R. 42-1, Sur
Surreply in Supp. of Mot. to Dismiss, Ex. A.) The *Davis* Amended Complaint alleged that the
*Davis* defendants were precluded from raising a holder in due course defense pursuant to 15
U.S.C. § 1641(d)(1). (*Id.,* Ex. A ¶ 54.) The *Davis* plaintiffs alleged that Section 1641(d)(1) did
not create a basis for federal court jurisdiction because it "merely eliminates the holder in due
course defense, it does not provide a basis for federal subject matter jurisdiction." (*Id.* Ex. A ¶
54). The *Davis* defendants removed the amended complaint on the basis of these allegations,
arguing that they raised a federal question. The District Court remanded the case to state court,
holding that the Section 1641 reference "does not transform their state law claims to ones arising
under federal law. Rather § 1641(d)(1) eliminates a state law defense for assignees of certain
mortgages, thereby subjecting them to all claims and defenses which a borrower could assert
against his original lender." (*Id.,* Ex. B p.6). The court found that the *Davis* plaintiffs only
asserted state law claims against the defendants.

Similarly, the *Davis* second amended complaint, the *Davis* third amended complaint and
the *Davis* consolidated amended complaint do not allege the TILA rescission causes of action at
issue in this case. Accordingly, under *American Pipe*, the three-year statute of limitations period
in 15 U.S.C. § 1635(f) was not tolled, and the rescission claims of Spann, Wingfield, and the
Hardt/Verbeck's are barred.

### 3. Relation Back

After allowing the parties to file a sur reply to the motion to dismiss and a sur sur reply, the Court informed the parties that it would allow no further briefing on the motion to dismiss unless specifically ordered by the Court. Plaintiffs thereafter attempted to disguise further arguments through a Motion for Judicial Notice. (R. 58-1, Pls.' Mot. for Judicial Notice.) In that motion, Plaintiffs argued that the Court should take judicial notice of the filing of the *Davis* second amended complaint, and "that at a minimum the allegations in this case relate back to July 25, 2002." (*Id.* at ¶ 8.) Although the Court granted the motion to the extent the Community Bank Plaintiffs asked the Court to take judicial notice of the content of the attached pleadings from the *Davis* case, the Court did not grant Plaintiffs leave to advance new arguments. Thus the "relation back" argument raised by Plaintiffs for the first time in their Motion for Judicial Notice is waived. *See United States v. Collins*, __ F.3d __, 2004 WL 502202 at *5 (7th Cir. Mar. 15, 2004) (arguments not raised in opening briefs are waived).

Even if considered on the merits, Plaintiffs' argument fails. The relation back doctrine of Federal Rule of Civil Procedure 15(c) does not apply to claims that are pending in separate cases. *See Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990).

### C. Tolling Based on Fraudulent Concealment

Plaintiffs next seek to extend the statute of limitations for their TILA rescission claims through the doctrine of fraudulent concealment. The doctrine of fraudulent concealment, also known as equitable estoppel, tolls the statute of limitations "if the defendant takes active steps to prevent the plaintiff from suing in time," *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990), "such as by hiding evidence or promising not to plead the statute of limitations."

*Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997) (citations and quotations omitted). "The granting of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon." *Hentosh v. Herman M. Finch University of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1174 (7th Cir. 1999) (citations and quotations omitted). The "doctrine contemplates that the plaintiff has discovered, or . . . should have discovered, that the defendant injured him, and denotes efforts by the defendant – above and beyond the wrongdoing upon which the plaintiff's claim is founded – to prevent the plaintiff from suing in time." *Id.* (citations and quotations omitted). The alleged acts of fraudulent concealment must constitute more than a failure to disclose the alleged initial fraudulent conduct. *See Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). Courts should apply equitable estoppel "sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002).

Plaintiffs allege that fraudulent concealment has tolled the statute of limitations here "in that the finance charge and APR miscalculations are undetectable by the average borrower." (R. 50-1, SAC ¶ 4a.) This sole allegation fails to show that Community Bank took any affirmative steps to conceal Plaintiffs' cause of action. They have not alleged any wrongdoing above and beyond the wrongdoing upon which the Plaintiffs' claim is founded. Plaintiffs have not alleged any deliberate effort on the part of Community Bank to prevent them from suing. Accordingly, they "cannot avoid the statute of limitations based on the doctrine of equitable estoppel." *Reeves v. Frierdich*, No. 99-1201, 99-1301, 2000 WL 10284, *4 (7th Cir. Jan. 4, 2000). *See also Hentosh*, 167 F.3d at 1174, *Cada*, 920 F.2d at 451.

In addition, Plaintiffs must plead their claim of fraudulent concealment with sufficient

particularity under Rule 9(b) to survive a motion to dismiss. *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Here, Plaintiffs have failed to do so, thus their fraudulent concealment allegation fails.

The three-year statute of limitations has run on the rescission claims of Spann, Wingfield, and the Hardt/Verbecks. Because Plaintiffs cannot toll the three-year statute of limitations, it would be futile for Plaintiffs to amend their complaint yet again in an attempt to sufficiently allege fraudulent concealment. Accordingly, the rescission claims of Spann, Wingfield, and the Hardt/Verbecks are dismissed with prejudice.

## III. Statute of Limitations for Statutory Damages Under TILA

Defendant also argues that Plaintiffs' statutory damages under TILA are barred by the statute of limitations. Plaintiffs' statutory damage claim under TILA is governed by 15 U.S.C. § 1640(e). Section 1640(e) states, in relevant part, "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Given that Plaintiffs obtained the loans at issue more than one year before the filing of this case on October 3, 2003, Defendant argues that Plaintiffs' TILA statutory damage claims are time-barred. The Court agrees.

Plaintiffs again seek to toll the statute of limitations based on the *Davis* action and fraudulent concealment. For the reasons detailed above, both of these arguments fail. Neither the filing of the *Davis* action nor Plaintiffs' sparse allegations of fraudulent concealment tolled the one-year statute of limitations.

Because Plaintiffs' statutory damages claims are subject to equitable estoppel, the Court

dismisses these claims without prejudice. The Community Bank Plaintiffs may amend their complaint with respect to the doctrine of fraudulent concealment.

## IV.    Section 4.1(a) of the Illinois Interest Act

Count II of Plaintiffs' complaint rests on Section 4.1(a) of the Illinois Interest Act (the "Act"). Section 4.1(a) of the Act provides:

> "Where there is a charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration for the loan, or for or in connection with the loan of money, whether paid or payable by the borrower, the seller, or any other person on behalf of the borrower to the lender or to a third party, or for or in connection with the loan of money . . . whether denominated 'points,' 'service charge,' 'discount,' 'commission,' or otherwise, and without regard to declining balances of principal which would result from any required or optional amortization of the principal of the loan, the rate of interest shall be calculated in the following manner:

> The percentage of the principal amount of the loan represented by all of such charges shall first be computed, which in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate . . . shall not exceed 3% of such principal amount.

815 ILCS 205/4.1a, *et. seq.* In other words, Section 4.1a precludes a lender from charging more than 3% of the amount of the loan principal on loans with an annual interest rate over 8%.

Defendant seeks to dismiss Count II on the basis that Section 4 of the 1981 amendments to the General Interest Rate statute removed all limits on interest rates, points, and other compensation that a lender could charge on mortgage loans, including those in Section 4.1a of the Act. *See* 815 ILCS 205/4(1)(L). Section 4 of the 1981 amendments, which the legislature enacted subsequent to the promulgation of Section 4.1a of the Act, provides that "[i]t is lawful to charge, contract for, and receive any rate or amount of interest or compensation with respect to the following transactions: . . . Loans secured by a mortgage on real estate." 815 ILCS

205/4(1)(L). Defendant argues that the 1981 amendment cannot coexist with the Section 4.1a limitations, and therefore the 1981 amendments to the General Interest Rate statute implicitly repealed Section 4.1a.

In *Currie v. Diamond Mortgage Corp. of Illinois*, 859 F.2d 1538 (7th Cir. 1988), the Seventh Circuit took the same position advocated by Defendant. In *Currie*, the Seventh Circuit affirmed the bankruptcy court's holding[1] that the 1981 amendments to the General Interest Rate statute repealed Section 4.1a of the Act.[2] *Currie*, 859 F.2d at 1542-43. The Seventh Circuit reasoned that the *Currie* plaintiffs' argument that Section 4.1a was consistent with the 1981 amendments "cannot be reconciled with the clear language and purpose of Section 4 which allows lenders to charge any rate of interest and any other compensation for loans such as that of plaintiffs." *Id.* at 1542. The Seventh Circuit further noted:

> If Section 4.1a is allowed to stand with the amended Section 4, Section 4.1a would impose a limit on the amount of points which lenders may charge on loans in excess of 8% per annum, while Section 4 enables lenders to charge any amount of compensation for such loans. Clearly, the failure to repeal Section 4.1a was an oversight of the legislators.

*Id.* at 1453.

In 1989, the Illinois Department of Financial Institutions issued an opinion letter regarding the *Currie* decision:

> It is the Department's position that the Currie Court clearly held that the 1981

---

[1] The district court in *Currie* had also affirmed the bankruptcy court's dismissal, but it based its opinion on a preemption issue. The district court, therefore, did not reach the issue of whether Section 4.1a was repealed.

[2] This holding in *Currie* was an alternate holding. The Seventh Circuit also ruled that Section 4.1a of the Act was preempted by Section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980.

> amendments to Section 4(1)(L) . . . provide that it is lawful to charge any rate
> of interest or compensation on loans secured by a mortgage on real estate.
> This amendment is so clearly inconsistent with the points limitation in
> Section 4.1a of the Statute that such limitation is necessarily repealed. Under
> these circumstances, the licensee [i.e., the lender] is no longer bound by the
> points limitation in Section 4.1a.

*Jackson v. Resolution GGF Oy*, 136 F.3d 1130, 1132 (7th Cir. 1998).

Subsequently, the First District Appellate Court of Illinois addressed the same issue in

*Fidelity Fin. Serv., Inc. v. Hicks*, 214 Ill. App. 3d 398, 158 Ill. Dec. 221, 574 N.E.2d 15 (1st Dist.

1991), and declined to follow *Currie*. The *Hicks* court refused to find that Section 4 of the 1981

amendments to the General Interest statute repealed Section 4.1a because, in part, Section 4.1a

still remained on the books. Furthermore, the *Hicks* found the two statutes reconcilable:

> Section 4 and Section 4.1a address charges of a different nature, and are not
> incompatible. Section 4.1a, rather than being inimical to the intent of Section 4,
> facilitates Section 4. By permitting any amount or rate of interest, the legislature
> provided that the cost of money could be passed to the borrower, assuring more
> money for lending. By limiting ancillary charges in connection with loans, the
> legislature assured that costs passed to borrowers accurately reflected the cost of
> money, assuring a more competitive market while limiting the possibilities for abuse.

*Id.* at 403-04. Although the *Hicks* court acknowledged *Currie*'s contrary holding, it stated that

"neither the Seventh Circuit nor the Opinion Letters of state agencies bind state courts." *Id.* at

402. In *Jackson v. Resolution GGF Oy*, 136 F.3d at 1132, the Seventh Circuit noted the conflict

between its holding in *Currie* and the holding in *Hicks*. *Jackson*, however, did not resolve the

conflict.

Plaintiffs urge the Court to adopt the holding of *Hicks*. It is clear, however, that "an

intermediate appellate court decision is not binding evidence of state law in circumstances when

it is not a good predictor of what the state's highest court would do in a similar case." *Hill v.*

*International Harvester*, 798 F.2d 256, 261 n.12 (7th Cir. 1986). Given the clear inconsistencies between the plain language of the 1981 amendments to Section 4 of the General Interest Statute and the language of Section 4.1a of the Act, the Court cannot agree with the holding in *Hicks*, and instead will follow the Seventh Circuit's holding in *Currie*. *See Krone v. 125 Home Loan Owner Trust*, Case No. 01-CV-0691 (S.D. Ill. Aug. 27, 2003) (Reagan, J.). The Court holds that Section 4 of the 1981 amendments is inconsistent with Section 4.1a of the Act. Accordingly, Count II is dismissed with prejudice.

## CONCLUSION

The three-year statute of limitations on Plaintiffs' claims for rescission under TILA has expired for Spann, Wingfield, and the Hardt/Verbecks. Accordingly, their rescission claims are time barred, and the Court dismisses them with prejudice for the reasons set forth above. Similarly, the one-year statute of limitations for all of the Community Bank Plaintiffs has expired. Because the one-year statute of limitations is subject to tolling, these claims are dismissed without prejudice. The Community Bank Plaintiffs have until April 16, 2004 to file a Third Amended Complaint addressing the deficiencies of their fraudulent concealment allegations. Finally, Count II is dismissed with prejudice.

Dated:    March 29, 2004                ENTERED

AMY J. ST. EVE
United States District Judge